12-3413-cr
*United States v. Padilla Alvarado*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: June 19, 2013)                                          Decided: June 24, 2013)

Docket No. 12-3413-cr

———————————————————————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

HEMENEGILDO PADILLA ALVARADO, AKA HEMENGILDO PADILLA ALVARADO, AKA
HEMENEGILDO ALVARADO PADILLA, AKA HEMENEGILDO ALVARADO, AKA ANGEL BURGOS,
AKA JOSE HERNANDEZ, AKA INDALECIO RODRIGUEZ, AKA PABLO CASTILLO, AKA JOSE
MARTINEZ, AKA PABLO CASTIO,

*Defendant-Appellant.*

———————————————————————————

Before: CALABRESI, CABRANES, and B.D. PARKER, *Circuit Judges.*

In this appeal we consider whether the United States District Court for the Southern District

of New York (William H. Pauley, III, *Judge*) plainly erred by sentencing a defendant to, *inter alia*, a

three-year term of supervised release even though Section 5D1.1(c) of the United States Sentencing

Guidelines provides that district courts "ordinarily should not impose a term of supervised release in

a case in which . . . the defendant is a deportable alien who likely will be deported after

imprisonment." U.S.S.G. § 5D1.1(c). Although the defendant in this case is such an alien, the

District Court imposed a sentence including supervised release after stating its view that the sentence was needed to deter the defendant from re-entering the United States illegally in the future. In these circumstances, we join some of our sister Circuits in concluding that imposing supervised release is appropriate and not a departure from Section 5D1.1(c) of the Guidelines if the district court finds "that supervised release would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." *United States v. Valdavinos-Torres*, 704 F.3d 679, 693 (9th Cir. 2012) (quotation marks omitted); *United States v. Dominguez-Alvarado*, 695 F.3d 324, 329 (5th Cir. 2012). The District Court made such a finding here, and therefore no further explanation was necessary.

Affirmed.

PEGGY CROSS-GOLDENBERG (Edward S. Zas, *on the brief*), Assistant Federal Public Defenders, Federal Defenders of New York, Inc., New York, NY, *for Hemenegildo Padilla Alvarado*.

P. IAN MCGINLEY (Brent S. Wible, *on the brief*), Assistant United States Attorneys, *for* Preet Bharara, United States Attorney, United States Attorney's Office for the Southern District of New York, New York, NY, *for the United States of America*.

PER CURIAM:

In this appeal we consider whether the United States District Court for the Southern District of New York (William H. Pauley, III, *Judge*) plainly erred by sentencing defendant-appellant Hemenegildo Padilla Alvarado ("Padilla") to, *inter alia*, a three-year term of supervised release even though Section 5D1.1(c) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provides that district courts "ordinarily should not impose a term of supervised release in a case in which . . . the defendant is a deportable alien who likely will be deported after imprisonment."

2

U.S.S.G. § 5D1.1(c).[1]  Although Padilla is such an alien, the District Court imposed a sentence including supervised release after stating its view that the sentence was needed to deter Padilla from re-entering the United States illegally in the future.  In these circumstances, we join some of our sister Circuits in concluding that imposing supervised release is appropriate and not a departure from the amended version of Section 5D1.1 of the Guidelines if the district court finds "that supervised release would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case."  *United States v. Valdavinos-Torres*, 704 F.3d 679, 693 (9th Cir. 2012) (quotation marks omitted); *United States v. Dominguez-Alvarado*, 695 F.3d 324, 329 (5th Cir. 2012).  The District Court made such a finding here, and therefore no further explanation was necessary.

Accordingly, we affirm the judgment of the District Court.

## BACKGROUND

Padilla, a citizen of the Dominican Republic, was indicted on August 10, 2011, on one count of illegally re-entering the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2), after he was deported following a conviction for an aggravated felony.  Padilla had previously been deported from the United States twice—first in 2003 and again in 2008.  Indeed, after his first deportation, he returned to the United States and, in 2006, was convicted of illegal re-entry following yet another conviction for an aggravated felony.  He was subsequently deported in 2008.  Nonetheless, he re-entered the United States again, and was most recently found to be in the United States illegally on January 21, 2011, when New York City police officers arrested him in Manhattan in connection with a robbery.  He pleaded guilty to the instant charged offense on October 19, 2011, without a plea agreement.

---

[1]  Section 5D1.1 of the Guidelines was amended on November 1, 2011 to add subsection (c).

3

At the sentencing hearing, which took place on June 5, 2012, the District Court focused on the need to deter Padilla from re-entering the United States illegally. Specifically, the District Court stated that Padilla "ha[d] demonstrated through his conduct that he's really not deterred by a significant term of imprisonment" and that because of Padilla's "complete disregard for the law of the United States," it was necessary to "escalat[e] [the] terms of imprisonment." App'x 55. The District Court also noted that there was "a need in this case to protect the community because [Padilla] has a history of violent crimes of different kinds and crimes that threaten public safety." *Id.*

Padilla's undisputed Guidelines range was 57 to 71 months, *see id.* at 27, 35, but Padilla asked the District Court for a below-Guidelines sentence of 36 months' imprisonment, *id.* at 50. The government argued that a Guidelines sentence was appropriate, given that Padilla had (1) previously been deported from the United States on two separate occasions, (2) committed the instant offense while on supervised release, and (3) committed serious crimes involving violence in the United States. *Id.* at 51-52. The District Court concluded that a term of 36 months' imprisonment was not sufficient to deter him from attempting to re-enter the United States illegally. It went on to express its view that it "ha[d] no real hope that [Padilla was] not going to try to turn around and come right back into the United States after any term of imprisonment that he serves." *Id.* at 56. It emphasized, moreover, that Padilla needed to "get the message" that he could not return to the United States. *Id.*

The District Court ultimately sentenced Padilla to 57 months' imprisonment, a term at the bottom of the applicable Guidelines range, "to be followed by three years of supervised release," subject to certain conditions, including that he "obey all immigration laws and comply with all directives of immigration authorities." *Id.* at 57. Padilla did not object to the imposition of supervised release before the District Court.

This appeal followed.

4

**DISCUSSION**

On appeal, Padilla contends that the District Court erred in imposing a three-year term of supervised release. In particular, he argues that the District Court plainly erred by not adequately explaining why supervised release was warranted, given that Section 5D1.1(c) of the Guidelines states that district courts "ordinarily should not impose a term of supervised release in a case in which . . . the defendant is a deportable alien who likely will be deported after imprisonment." U.S.S.G. § 5D1.1(c).

**A.**

Criminal sentences are generally reviewed for reasonableness, which "requires an examination of the length of the sentence (substantive reasonableness) as well as the procedure employed in arriving at the sentence (procedural reasonableness)." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). A district court errs procedurally when "it fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Where, as here, a defendant contests the procedural reasonableness of his sentence on appeal, but did not raise his objections before the district court, we review for plain error. *United States v. Verkhoglyad*, 516 F.3d 122, 127-28 (2d Cir. 2008). A finding of "plain error" requires that

> (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (citations, alteration, and internal quotation marks omitted); *see also United States v. Zangari*, 677 F.3d 86, 95 (2d Cir. 2012). Rigorous plain error

5

analysis is especially appropriate in contexts that present the possibility of "sandbagging"—*i.e.*, the risk that a defendant will strategically withhold an objection below, only to raise it on appeal. We do not suggest that this was done in the case before us. But the situation presented in this appeal is one that poses such a danger. Defendants in similar circumstances might well be tempted to say nothing about a district court's failure to give specific reasons for the imposition of supervised related and then, if displeased by the sentence the district court gives, seek an order for resentencing on appeal.

**B.**

As noted, Padilla's central complaint is that the District Court did not adequately explain why a term of supervised release was warranted in his case. He relies on the fact that Section 5D1.1(c) generally discourages district courts from imposing supervised release on aliens "who likely will be deported after imprisonment." *See* U.S.S.G. § 5D1.1(c) ("The court *ordinarily* should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." (emphasis supplied)). However, the commentary accompanying Section 5D1.1 clarifies that "[*t*]*he court should . . . consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.*" *Id.* § 5D1.1, cmt. n.5 (italics in original).[2]

Accordingly, although imposing a term of supervised release on aliens "who likely will be deported after imprisonment" is "ordinarily" discouraged pursuant to Section 5D1.1(c), the Guidelines commentary specifies that a district court should consider imposing supervised release on such defendants if it would provide "an added measure of deterrence and protection." *Id.*; *see also United States v. Valdavinos-Torres*, 704 F.3d 679, 693 (9th Cir. 2012); *United States v. Dominguez-Alvarado*,

---

[2] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *see also United States v. Steele*, 714 F.3d 751, 754 (2d Cir. 2013).

695 F.3d 324, 329 (5th Cir. 2012) ("To be sure, supervised release should not be imposed absent a determination that supervised release would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.").[3]  In other words, if a district court makes a finding that "an added measure of deterrence and protection" is appropriate "based on the facts and circumstances of a particular case," then imposing supervised release on an "alien who likely will be deported after imprisonment" does not constitute a departure from the Guidelines.  A district court is not required explicitly to link its finding that added deterrence is needed to its decision to impose a term of supervised release; but, for the sake of clarity, we would encourage district courts to do so.

## C.

The District Court in this case found that Padilla is particularly likely to re-enter the country illegally again in the future, and therefore that "an added measure of deterrence and protection" was needed, U.S.S.G. § 5D1.1, cmt. n.5; *see also Valdavinos-Torres*, 704 F.3d at 693; *Dominguez-Alvarado*, 695 F.3d at 329.  Indeed, as noted above, the District Court stated that it was necessary to "escalat[e] [the] terms of [Padilla's] imprisonment" because he "ha[d] demonstrated through his conduct that he's really not deterred by a significant term of imprisonment."  App'x 55.  The District Court also noted that it "ha[d] no real hope that [Padilla was] not going to try to turn around and come right back into the United States after any term of imprisonment that he serves," *id.* at 56, but emphasized that Padilla needed to "get the message" that he could not return to the United States, *id.*

---

[3]  Until today, we have only considered the amended version of U.S.S.G. § 5D1.1(c) in a non-precedential summary order.  *See United States v. Garcia*, No. 11-5321-cr, 2013 WL 309994, at *2 (2d Cir. Jan 28, 2013).  In *Garcia*, we concluded that the district court did not err in sentencing a deportable alien to a term of supervised release because the record demonstrated that the district court "thought supervised release was necessary to provide added deterrence."  *Id.*  We agree with the reasoning of *Garcia*, which also reflected the practice of some of our sister Circuits, that "supervised release is appropriate even under the new Guidelines if the district court finds that [added deterrence is necessary because] a defendant is particularly likely to reenter the country illegally again in the future."  *Id.*; *see also United States v. Valdavinos-Torres*, 704 F.3d 679, 693 (9th Cir. 2012); *United States v. Dominguez-Alvarado*, 695 F.3d 324, 329 (5th Cir. 2012); *United States v. Lawrence*, 503 F. App'x 181 (3d Cir. 2012) (non-precedential summary order).

We are mindful that Section 5D1.1(c) was not explicitly discussed at the sentencing hearing[4] and that the District Court did not specifically state that *supervised release* (as opposed to Padilla's sentence generally) was designed to provide an additional measure of deterrence. Nevertheless, it is clear that the District Court (1) was aware of the amended version of Section 5D1.1(c),[5] (2) considered Padilla's specific circumstances and the Section 3553(a) factors,[6] and (3) was convinced that additional deterrence was needed. *See* App'x 55-59. The District Court then imposed a sentence—including supervised release—based on its consideration of the Section 3553(a) factors and its factual findings. In other words, the District Court properly calculated the Guidelines range, treated the range as appropriately advisory, considered the Section 3553(a) factors, selected a sentence based on facts that were not clearly erroneous, and adequately explained its chosen sentence, which was in the Guidelines range. *Robinson*, 702 F.3d at 38. Nothing more was required. *Cf. United States v. Margiotti*, 85 F.3d 100, 105 (2d Cir. 1996) (noting that, in the context of sentencing, the "district court's failure to expressly invoke [the specific Guidelines provision] or its accompanying commentary cannot itself suggest that the court's approach was in error").

In these circumstances, we conclude that the District Court did not err, much less plainly err, in sentencing Padilla to, *inter alia*, a three-year term of supervised release.[7] This conclusion is

---

[4] As noted, Padilla did not object to the imposition of a term of supervised release before the District Court.

[5] The Pre-Sentence Report referred to the amended version of Section 5D1.1(c), and the District Court adopted its factual findings. *See* Padilla's Br. 16; App'x 54.

[6] At the sentencing hearing, the District Court specifically noted its consideration of the Section 3553(a) factors: "Now, turning to the 3553(a) factors, most importantly in this case, there is a need for specific deterrence, and Mr. Padilla Alvarado has demonstrated through his conduct that he's really not deterred by a significant term of imprisonment." App'x 55.

[7] As noted, when reviewing for plain error, we may correct an error not raised below "only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious . . . ; (3) the error affected the appellant's substantial rights . . . ; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Marcus*, 130 S. Ct. at 2164; *see also Zangari*, 677 F.3d at 95. We recently explained that "[t]o be 'plain,' an error must be so obvious that 'the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.'" *United States v. Wagner-Dano*, 679 F.3d 83, 94 (2d Cir. 2012) (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)).

supported by precedent from our Circuit, *see United States v. Sero*, 520 F.3d 187, 192 (2d Cir. 2008) (rejecting a challenge to a "'seemingly automatic,' 'errant,' and 'unreasonable' term of supervised release" where "the district court clearly articulated its consideration of the § 3553(a) factors and carefully considered whether the Guidelines sentence it imposed would be appropriate"), as well as the Fifth Circuit's recent decision in *Dominguez-Alvarado*. There, the Fifth Circuit specifically concluded that a district court's failure to refer to Section 5D1.1(c) in sentencing a deportable alien to a term of supervised release "d[id] not constitute error, plain or otherwise" because the district court stated that "[it] gave the sentence after looking at the factors in 3553(a), to deter future criminal conduct, [and based on] [the defendant's] particular background and characteristics, which apparently do not make him a welcome visitor to this country." *Dominguez-Alvarado*, 695 F.3d at 329-30 (internal quotation marks omitted). It also noted that "[e]ven when an objection is voiced under § 5D1.1(c), this [type of] particularized explanation and concern would justify [the] imposition of a term of supervised release." *Id.* at 330. We agree.

## D.

Moreover, even assuming *arguendo* that the District Court did not adequately explain its reasons for imposing supervised release—a proposition we reject—Padilla's criminal record demonstrates that supervised release "would provide an added measure of deterrence and protection based on the facts and circumstances of [this] particular case." U.S.S.G. § 5D1.1, cmt. n.5. Accordingly, like the Fifth Circuit—which has considered a virtually identical situation—we conclude that the District Court did not commit plain error here because the alleged error did not affect Padilla's substantial rights, since it is clear that it did not affect the outcome of the sentencing proceeding. *See United States v. Cancino-Trinidad*, 710 F.3d 601, 607 (5th Cir. 2013) (concluding that a district court did not plainly err where a defendant's "criminal record support[ed] a finding that the imposition of [supervised release] would provide an added measure of deterrence and protection"

9

such that the alleged error "did not affect [the defendant's] substantial rights" (internal quotation marks omitted)); *see also Marcus*, 130 S. Ct. at 2164 (explaining that, in order for an error to affect a defendant's "substantial rights," "there must be a *reasonable probability* that the error affected the outcome of the trial" (emphasis supplied)).[8]

## CONCLUSION

To summarize, we hold that:

(1)     Although imposing a term of supervised release on an "alien who likely will be deported after imprisonment" is "ordinarily" discouraged under U.S.S.G. § 5D1.1(c), imposing a term of supervised release on such a defendant does not constitute a departure from the Guidelines if a district court determines that "an added measure of deterrence and protection" is appropriate "based on the facts and circumstances of a particular case," U.S.S.G. § 5D1.1, cmt. n.5.

(2)     The District Court determined that "an added measure of deterrence and protection" was needed in Padilla's case, and therefore it adequately explained why it sentenced Padilla to a term of supervised release.

(3)     Even assuming *arguendo* that the District Court erred by not adequately explaining its reasons for imposing a term of supervised release on Padilla, in the circumstances presented here it did not "plainly err" because that alleged error did not affect Padilla's substantial rights. Inasmuch as Padilla's criminal record demonstrates that supervised release "would provide an added measure of deterrence and protection," there is no reasonable probability that the result of the proceeding would have been different in the absence of the supposed error.

---

[8] Finally, even assuming that any alleged error affected Padilla's substantial rights, we would not regard it as prudent, in these circumstances, to exercise our discretion and remand for resentencing, for the simple reason that any alleged error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 470 (1997).

For the reasons stated, the June 19, 2012 judgment of conviction of the District Court is

**AFFIRMED**.